## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 12-22397-CIV-ROSENBAUM

ENRIQUE ALBERTO POCHAT,

       Petitioner,

v.

MERRILL LYNCH, PIERCE, FENNER
& SMITH, INC., and MERRILL LYNCH
INTERNATIONAL FINANCE,

       Respondents.

_____/

### ORDER CONFIRMING AND MODIFYING THE ARBITRATION AWARD

This matter is before the Court on Petitioner Enrique Alberto Pochat's Petition to Vacate Arbitrator's Award [D.E. 1] and Respondents Merrill Lynch, Pierce, Fenner & Smith, Inc., and Merrill Lynch International Finance's Petition to Confirm in Part and Modify in Part, or in the Alternative Correct, or in the Alternative Vacate in Part and Confirm in Part Arbitration Award [Case No. 12-22414-CIV-ROSENBAUM, D.E. 1].[1]  The Court has carefully reviewed the pending Motions, all supporting and opposing filings, and the record.  For the reasons set forth below, the Court denies Pochat's Petition and grants in part and denies in part Respondents' Petition.  Specifically, the Court confirms the underlying Arbitration Award in all respects, except that the

---

[1] Later in the day that Pochat filed the pending suit, Respondents Merrill Lynch, Pierce, Fenner & Smith, Inc., and Merrill Lynch International Finance filed a second lawsuit, Case No. 12-22414-CIV-ROSENBAUM, seeking to confirm in part and to modify in part the same arbitration award that is the subject of Pochat's case.  Pochat moved to consolidate the two cases, and the Court granted the motion.  *See* D.E. 6, D.E. 7.  All references in this Order to docket entries refer to the docket in the instant case unless otherwise specifically indicated.

Court modifies the Award pursuant to 9 U.S.C. § 11(c) to allow Merrill Lynch to offset the $200,000 it owes Pochat against the $848,915.48, plus interest from the date of default, owed by Pochat to Merrill Lynch.

## *I.  Background*

The Arbitration decision before this Court, Financial Industry Regulatory Authority ("FINRA") Dispute Resolution Arbitration No. 09-7228 (the "Arbitration"), arose from Petitioner Enrique Alberto Pochat's October 2009 termination from his position as a Financial Advisor in the Miami office of Respondent Merrill Lynch, Pierce, Fenner, & Smith, Inc., a national securities brokerage firm and a member of FINRA [D.E. 1].   The Parties dispute various aspects of the Arbitration Award (the "Award"), which actually consists of two awards — one in favor of Pochat and one in favor of Respondents Merrill Lynch, Pierce, Fenner, & Smith, Inc., and Merrill Lynch International Finance (collectively, "Merrill Lynch").  *See* D.E. 1, Ex. A, *FINRA Dispute Resolution Award in Case No. 09-7228*.   The Arbitrators found Merrill Lynch liable to Pochat in the amount of $200,000 for failing to supervise him properly during his employment in Argentina and also found Pochat liable to Respondents for the unpaid principal and interest on a nearly $1 million loan Petitioner received from Respondents prior to his termination.   *Id*.

### A.    The Underlying Dispute

Petitioner Enrique Alberto Pochat began working for Merrill Lynch as a financial advisor in 1998, when he was hired by its Buenos Aires, Argentina, branch office.  D.E. 1 in 12-22414 at 3.  In 2002, Pochat, who had developed a $120,000,000 client book, moved from the Buenos Aires office to the Merrill Lynch international office in Miami, Florida. D.E. 1 at 2-3.

In early 2009, in connection with the merger between Merrill Lynch and Bank of America,

certain Merrill Lynch financial advisors were offered the opportunity to participate in Merrill Lynch's Advisor Transition Program ("ATP") and receive loans from Merrill Lynch at a favorable interest rate. D.E. 1 in 12-22414 at 3. Pochat elected to take advantage of the ATP program, and on January 8, 2009, Petitioner executed a promissory note (the "Note" or "ATP Note") with Merrill Lynch in which he agreed to borrow $940,511.00 at an annual interest rate of 3.0% for all unpaid principal. *Id*. The terms of the Note specify that any outstanding balance becomes immediately payable if Petitioner's employment with Merrill Lynch is terminated for any reason. *Id*. Section of the ATP Note states, in relevant part,

> Failure to Pay or Insolvency. Notwithstanding anything to the contrary contained herein, all outstanding principal and accrued but unpaid interest on *this Note shall become due and immediately payable if (a) the undersigned's employment with Merrill Lynch is terminated for any reason* . . .

D.E. 1-5 at 67-69[2] (emphasis added). The terms of the Note also state that its "provisions . . . shall be governed by and construed in accordance with the laws of the State of New York, without reference to the principles of choice of law thereof." *Id*. at 68. On January 23, 2009, Petitioner received the loan amount ($940,511.00) from Merrill Lynch. Case No. 12-22414, D.E. 1 at 3.

On October 19, 2009, Pochat's employment was terminated by Merrill Lynch. *Id*. According to Respondents, Pochat had engaged in an outside investment in a Minnesota company called IPOOL with Merrill Lynch clients when he was employed in Merrill Lynch's Buenos Aires office in 1999, an act known in the industry as "selling away." *Id*. at 2. At this point, the Parties' renditions of the

---

[2]Some filings have more than one page-numbering system — the document's own page numbers and the page numbers imprinted across the top of the document by the Court's CM/ECF system. Where more than one page-numbering system appears on a document, this Order refers to the page number left by the Court's CM/ECF system.

facts diverge.  Merrill Lynch states that its investigation into the outside investment "conclusively revealed that [Pochat] violated both Merrill Lynch's policies and industry rules/regulations regarding improper and unauthorized selling away to clients and commingling assets with clients."  *Id*. at 3. Although Petitioner does not dispute that he entered into the IPOOL investment with Merrill Lynch clients, he asserts that it was "an act which he disclosed to his manager in Argentina, which was commonplace and done by several other Merrill Lynch Argentina financial advisors at the time with Argentinean clients, and which Merrill Lych had failed to inform him was unauthorized and improper.  D.E. 1 at 3.  For their part, Respondents retort that "at no time did [Petitioner] ever describe orally or in written detail his role in the transaction, including the participation of Merrill Lynch clients, or the bundling of his clients' assets to purchase securities only in his name."  Case No. 12-22414, D.E. 1 at 3.

Upon terminating Pochat, Merrill Lynch filed a Uniform Termination Notice for Securities Industry Registration ("Form U-5") with FINRA, a regulatory form that brokerage firms must file with the agency whenever as associated person's registration and employment with the firm is terminated. *Id*. at 4. The Form U-5 for Mr. Pochat states that he violated securities industry rules "prohibiting selling away and financial arrangements with clients." *Id*.

At the time of his termination, Petitioner still owed Merrill Lynch $848,915.48, plus interest, on the ATP Note. *Id*.[3]

---

[3]Merrill Lynch initially filed a claim against Mr. Pochat in New York state court in order to recover the balance of Petitioner's loan obligation. D.E. 1 in 12-22414 at 4.  This action was ultimately dismissed because FINRA rules required Merrill Lynch to arbitrate such disputes.  *See* D.E. 1 at 4 n. 3.

**B.**     **The Arbitration**

In December 2009, Pochat commenced a claim in arbitration against Merrill Lynch under the FINRA Code of Arbitration Procedure for Industry Disputes.  *Id*.  In his Statement of Claim, Petitioner asserted the following: (1) Merrill Lynch violated FINRA Rules mandating arbitration by filing a complaint against Pochat in New York state court to recover the balance of the ATP Note; (2) Merrill Lynch violated FINRA Rules of fair dealing; (3) Merrill Lynch breached its employment contract with Pochat by violating express contractual provisions and/or "the duty of good faith and fair dealing that is legally implied in the performance of every contract under New York law"; (4) Merrill Lynch was negligent in failing to fulfill its duty to treat Pochat with reasonable and prudent standards; (5) Merrill Lynch tortiously interfered with Pochat's business relationships; (6) Merrill Lynch tortiously interfered with Pochat's "prospective business advantage"; (7) Merrill Lynch engaged in unfair competition; (8) Merrill Lynch disparaged Pochat and used defamatory language in his Form U-5; and (9) Merrill Lynch was unjustly enriched. D.E. 1-5 at 14-20.  Pochat subsequently submitted an Amended Statement of Claim on April 29, 2010, contending that the ATP Note was unconscionable.  *Id*. at 20.

In response to Pochat's initial Statement of Claim, Merrill Lynch submitted its Answer and Defenses to Statement of Claim and Counterclaim on February 25, 2010. Case No. 12-22414, D.E. 1 at 4.  Merrill Lynch's Counterclaim sought recovery of the outstanding balance of the ATP Note from Petitioner.  *Id*.  The Parties also submitted Pre-hearing Briefs on March 28, 2012, in accordance with FINRA rules.  *Id*. at 5.

The final arbitration hearing (the "Hearing") was held over four days in Miami, Florida, from April 17-20, 2012, before a panel of three FINRA arbitrators.  *Id*.  The Hearing commenced with the

Panel hearing argument on an Emergency Motion that Pochat submitted to the Arbitrators, alleging discovery violations by Merrill Lynch. D.E. 1 at 5. According to Petitioner, Respondents had produced to Pochat additional discovery several days before the Hearing. *Id*. Pochat argued in his Emergency Motion that the production violated a Panel discovery order and FINRA rules, and he requested that Respondents be "severely sanctioned" for their actions. *See* D.E. 1-11 at 2. The Panel, after hearing argument from both Parties on the discovery issue, denied Petitioner's Emergency Motion and permitted the late-produced documents to be admitted into evidence. D.E. 1 at 11. The Panel then proceeded with the Final Hearing.

In the afternoon of the last day of the hearing, one of the arbitrators began questioning Merrill Lynch about other Financial Advisors in its Buenos Aires office who may have also invested in IPOOL with firm clients. Case No. 12-22414, D.E. 1 at 5. Specifically, the Arbitrator requested Respondents to produce copies of the other Advisors' "Outside Interest Questionnaires," an internal Merrill Lynch questionnaire that required financial advisors to disclose any investment activities with which they were involved outside the firm. *See* D.E. 15-1 at 93-103. Apparently, the Arbitrator was interested in determining whether Pochat had been "singled out" for selling away. Case No. 12-22414, D.E. 1 at 5. Merrill Lynch objected to producing the documents without testimony, but the Panel overruled its objection. *Id*. at 6. Respondents then made an oral Motion to Adjourn the hearing so that Merrill Lynch could conduct further discovery and present testimony regarding the requested materials. *Id*. After deliberating off the record, the Panel denied Respondents' Motion and required Merrill Lynch to produce the Outside Interest Questionnaires within two weeks. *Id*.; *see also* D.E. 15-1 at 116.

The Arbitration Panel issued a unanimous award on May 29, 2012. *See* D.E. 1-3. The

Award states, in relevant part,

> Respondent MLPFS is found liable for its failure to provide adequate supervision to Claimant while he was employed in Argentina and shall pay to Claimant the sum of $200,000, pre-judgment interest specifically excluded.   Post-judgment interest shall accrue in accordance with Rule 12904(j) of the Code of Arbitration Procedure (the "Code").

> Claimant is liable and shall pay Respondent/Counterclaimants MLPFS and ML International the principal balance due on the note of $848,915.48, plus interest in the additional amount of 3% per annum from October 19, 2009 through such date as the principal and interest are fully paid.

> The Panel has denied Claimant's request for an expungement of the defamatory language on his form U5.

> Any and all claims for relief not specifically addressed herein, including Claimant's request for punitive damages, and the parties' requests for attorneys' fees, are denied.

*Id*. at 4.

One week after the Panel issued its Award, on July 5, 2012, counsel for Merrill Lynch sent letters to the FINRA Case Administrator, Steve D. Encaoua, and to counsel for Pochat, W. Stephen Adams, stating that Merrill Lynch "hereby give[s] notice that our clients [Merrill Lynch] affirmatively offset the $200,000 owed to Mr. Pochat against the $915,406.29 owed by Mr. Pochat to MLPFS and ML International.  This leaves Mr. Pochat owing MLPFS and ML International $648,915.48 plus the interest as identified in the award."  Case No. 12-22414, D.E. 11-6 at 2.  In response, counsel for Pochat emailed Encaoua, contesting Merrill Lynch's ability to decide unilaterally to offset the Award amounts, arguing that such an act would be contrary to the Panel's Award because the Award was silent regarding offset.  Case No. 12-22414, D.E. 1-13 at 6.

In light of Petitioner's opposition and the fact that the Award did not mention setoff, Merrill

Lynch wrote again to Encaoua , this time formally requesting that the Panel be permitted to clarify whether the two Award amounts could be offset. *Id*. at 2-3. Respondents made their request pursuant to FINRA Rule 13905(a)(2), which allows a party to an arbitration proceeding to make submissions to the arbitrators after an award has been rendered where "computational errors," among other grounds, exist. *Id*. Pochat opposed Merrill Lynch's request. *See* D.E. 12-1. In a June 7, 2012, letter to Encaoua, Pochat argued that the matter of offset could not be put before the Panel pursuant to FINRA Rule 13905(a) since it did not involve a "computational error." *Id*. at 2. Pochat further contended that the Panel could not consider the issue under FINRA Rule 13905(a)(3), which permits parties to submit documents to the Panel post-award regarding any matter, as long as all parties agree to the issue's submission, since Pochat would not consent to such action. *Id*.

On June 26, 2012, Encaoua informed the Parties that the FINRA Director of Admissions had determined that Merrill Lynch's submissions regarding offset "do not comply with the grounds enumerated in Rule 13905. Accordingly, the submissions will not be sent to the arbitrators." Case No. 12-22414, D.E. 1-14. Thus, the Panel did not have an opportunity to consider whether the awards to Pochat and to Merrill Lynch could be offset.

## C.    The Proceedings in this Court

On June 28, 2012, Pochat initiated the current civil action petitioning this Court to vacate in part the Arbitration Award ("Petition to Vacate") [D.E. 1]. Also on that date, Respondents Merrill Lynch sought an Order from this Court in Case Number 12-22414 confirming in part and modifying in part, or, alternatively, correcting in part, or, alternatively, vacating in part the same Arbitration Award ("Petition to Confirm in Part") [Case No. 12-22414, D.E. 1]. Respondents, in opposing Pochat's Petition to Vacate, have also moved for sanctions against Petitioner in the form of

8

attorneys' fees.  *See* D.E. 8 at 1, 16-18.

On July 13, 2012, upon Petitioner Pochat's Motions to Consolidate [D.E. 6; Case No. 12-22414, D.E. 12], Case No. 12-22414 was consolidated with the instant matter.  *See* D.E. 7.

In his Petition, Petitioner argues that the part of the Award finding Pochat liable to Respondents should be vacated because (1) the Panel exceeded its powers by manifestly disregarding the law and (2) the Arbitrators were guilty of misbehavior that prejudiced Pochat's rights.  *Id.*

Respondents Merrill Lynch oppose Petitioner's request for vacatur and ask this Court to confirm the Panel's Award in full, offset the two Award amounts, and enter judgment in favor of Merrill Lynch for the net amount.  *See* Case No. 12-22414, D.E. 1.  In the alternative, Respondents argue that the part of the Award finding MLPFS liable to Petitioner should be corrected because the Panel awarded Pochat on a matter not submitted to the Panel, or, alternatively, should be vacated because the Panel exceeded its powers and is guilty of misconduct.  *Id.*[4]

### *Discussion*

### A.    **Jurisdiction and Venue**

Because complete diversity exists between the parties (both Merrill Lynch companies are organized under the laws of Delaware with their principal places of business in New York, and Pochat is a resident of Miami, Florida) and the amount in controversy exceeds $75,000, exclusive of interest and costs, this Court has jurisdiction pursuant to 28 U.S.C. § 1332(a).  Venue is proper in this district because the Arbitration took place in Miami, Florida, and the Award was rendered in this district.

---

[4] Petitioner and Respondents filed and served their respective petitions with 30 days of the issuance of the Arbitration Award, in accordance with FINRA Rule 13904(j).

**B.    Standard of Review**

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, governs this case because federal subject matter jurisdiction exists, *see Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n. 32 (1983), and the subject of the Arbitration "evidences a transaction involving interstate commerce." 9 U.S.C. § 2; *see also Brown v. Rauscher Pierce Refsnes, Inc.*, 994 F.2d 775, 778 (11th Cir. 1993) ("Our review of commercial arbitration awards is controlled by the Federal Arbitration Act . . . ."). The FAA "imposes a heavy presumption in favor of confirming arbitration awards," *Riccard v. Prudential Ins. Co. of Am.*, 307 F.3d 1277, 1288 (11th Cir. 2002), and "federal courts should defer to an arbitrator's decision whenever possible." *Frazier v. CitiFinancial Corp, LLC*, 604 F.3d 1313, 1321 (11th Cir. 2010) (citation omitted). "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his position." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987). Accordingly, the Eleventh Circuit has described courts' confirmations of arbitration awards as "usually routine or summary." *Riccard*, 307 F.3d at 1288.

Thus, it is also "well settled that judicial review of an arbitration award is narrowly limited." *Davis v. Prudential Sec., Inc.*, 59 F.3d 1186, 1190 (11th Cir. 1995); *see also Robbins v. Day*, 954 F.2d 697, 683 (11th Cir. 1992), *overruled on other grounds*, *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 948 (1995) ("The [FAA] does not allow courts to 'roam unbridled' in their oversight of arbitration awards, but carefully limits judicial intervention to instances where the arbitration has been tainted in specific ways."); *Cat Charter, LLC v. Schurtenberger*, 646 F.3d 836, 843 (11th Cir. 2011) ("[A]rbitrators do not act as junior varsity trial courts where subsequent

appellate review is readily available to the losing party.") (citation and internal quotation marks omitted). Indeed, "judicial review of arbitration decisions is among the narrowest known to the law." *AIG Baker Sterling Heights, LLC v. American Multi-Cinema, Inc.*, 508 F.3d 995, 1001 (11th Cir. 2007) (citation and internal quotation marks omitted).

In the Eleventh Circuit, Sections 10 and 11 of the FAA set forth the exclusive grounds for vacating, correcting, or modifying an arbitration award. 9 U.S.C. §§ 10(a), 11; *see also White Springs Agric. Chems., Inc. v. Glawson Invs. Corp.*, 660 F.3d 1277, 1280 (11th Cir. 2011) (citing *Hall St. Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 586 (2008)) ("Sections 10 and 11 of the FAA, 9 U.S.C. §§ 10, 11, provide the exclusive means by which a federal court may upset and arbitration panel's award."); *Cat* Charter, 646 F.3d at 842 n.10 ("The Supreme Court has made clear that the statutory grounds justifying vacatur found in 9 U.S.C. § 10(a) are exclusive.") (citing *Hall St.*, 552 U.S. at 578); *Frazier v. Citifinancial Corp., LLC*, 604 F.3d 1313, 1321, 1324 (11th Cir. 2010) (holding that the statutory grounds for vacatur set out in the FAA are exclusive). Stated another way, "Section 9 of the FAA provides that, upon application of any party to the arbitration, the court *must* confirm the arbitrator's award unless it is vacated, modified, or corrected in accordance with sections 10 and 11 of the statute." *Frazier*, 604 F.3d at 1321 (emphasis in original).

Section 10 of the FAA permits vacatur of arbitration awards in only four narrow circumstances:

    (1)    Where the award was procured by fraud, corruption, or undue means;

    (2)    Where there was evident partiality or corruption in the arbitrators, or either of them;

    (3)    Where the arbitrators were guilty of misconduct in refusing to

> postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy, or of any other misbehavior by which the rights of any party may have been prejudiced; or
>
> (4)     Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter was not made.

9 U.S.C. § 10(a)(1)-(4).  The FAA also provides that arbitration awards may be corrected or modified in three situations.  9 U.S.C. § 11.  Section 11 states that a court "may make an order modifying or correcting the award upon application of any party to the arbitration —

> (a)     Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.
>
> (b)     Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.
>
> (c)     Where the award is imperfect in matter of form not affecting the merits of the controversy.
>
> The order may modify and correct the award so as to effect the intent thereof and promote justice between the parties.

*Id.*  In applying these grounds for vacating, modifying, or correcting an award, the Eleventh Circuit has cautioned, courts "must always bear in mind that the basic policy of conducting arbitration proceedings is to offer a means of deciding disputes expeditiously and with lower costs than in ordinary litigation."  *Schmidt v. Finberg*, 942 F.2d 1571, 1573 (11th Cir. 1991); *see also Booth v. Hume Pub., Inc.*, 902 F.2d 925, 933 (11th Cir. 1990) ("The Act's enunciation of specific defenses to a petition to confirm an award 'was not intended to overthrow the general advantage of speedy and effective decision of disputes by arbitration and the creation of these general grounds does not

12

obliterate the hesitation with which courts should view efforts to re-examine awards. To do otherwise would defeat the primary advantages of speed and finality which led to the development of arbitration. . . .'") (citation omitted).

**C.      Pochat's Petition to Vacate the Award in Part**

Pochat argues that the part of the Award finding him liable to Respondents should be vacated on two grounds.  First, Pochat contends that vacatur is necessary under 9 U.S.C. § 10(a)(4) because, when the Panel found him liable on the loan that he asserts that Respondents' negligence prevented him from being able to repay, the Arbitrators exceeded their powers by acting in "manifest disregard" of the law.  *See* D.E. 1 at 6-8, 12-19.  Second, Petitioner urges that the Panel exceeded its powers and was guilty of "misbehavior" because it admitted into evidence discovery that Merrill Lynch produced two days before the Final Hearing and denied Petitioner's Emergency Motion requesting that Respondents' be sanctioned for the late production.  *Id*. at 8-11, 19-21.  In sum, Petitioner claims that "[t]he Panel's award in favor of Merrill Lynch is simply not supported by the evidence at the arbitration nor the law, and is in fact contradictory to the Panel's own findings, and, therefore, confirming this award as it is would be an unfortunate travesty of justice."  *Id*. at 12.

Respondents oppose Pochat's Petition, arguing that "Petitioner has not set forth any valid grounds for vacating the arbitration award."  D.E. 8 at 1.  Specifically, Respondents claim that, in the Eleventh Circuit, manifest disregard of the law is no longer an independent basis for vacatur and that it also cannot be considered as "shorthand" for a claim under Section 10(a)(4), which permits vacatur where the panel has exceeded its powers.  D.E. 8 at 9-11.  Merrill Lynch also objects to Petitioner's contention that the Panel exceeded its powers and was guilty of "misbehavior" regarding Respondents' late document production because "the law is clear that a Panel is given broad

13

discretion with respect to the admission of evidence and decisions regarding sanctions." *Id.* at 2, 13-16. Thus, Respondents contend, Section 9 of the FAA mandates confirmation of this part of the Award because no grounds warrant vacatur. *Id.*

       1.    <u>The Award Will Not Be Reversed for Manifest Disregard of the Law</u>

Petitioner first argues that the Award should be vacated in part because the Panel exceeded its powers under FAA section 10(a)(4) by manifestly disregarding the law. See D.E. 1 at 7-8, 13-19. In this regard, Pochat suggests that *In re Frymire*, 96 B.R. 525 (Bankr. E.D. Pa.),[5] *rev'd in part on other grounds*, 107 B.R. 506 (E.D. Pa. 1989), and *Wakefield v. Northern Telecom, Inc.*, 769 F.2d 109 (2d Cir. N.Y. 1985),[6] required the Panel to decline to award Merrill Lynch repayment of the ATP Note.

But this Court may not consider whether the Award conflicts with the *Frymire* and *Wakefiled* decisions because even if it does, manifest disregard of the law does not provide a basis for vacatur of an arbitration award in the Eleventh Circuit. Prior to the Supreme Court's holding in *Hall Street*

---

[5] In *In re Frymire*, the Pennsylvania bankruptcy court considered the claims of a stockbroker who, after being terminated from his brokerage firm, sought discharge of the "advance compensation award" he had received from the firm. Invoking the "maxim that a promisor cannot be held responsible to perform a contractual promise which the promisee prevents him from performing," 96 B.R. at 540 (citations omitted), the court held that "[i]t is apparent that, having discharged Plaintiff from its employ, [the firm] prevented the Plaintiff from performing his undertaking to remain and have the liability to repay the entire [advance compensation award] eliminated, without further obligation on the part of the Plaintiff. Therefore, the Plaintiff should be relieved from his liability to repay [the firm] by reason of its having discharged him." *Id.* In reaching this conclusion, the court noted in passing that the sole exception to this rule exists where the former employee engages in conduct "so egregious as to have compelled his discharge." *Id.*

[6] In *Wakefield*, the Court of Appeals found that an employer's termination of an at-will employee "for the purpose of avoiding the payment of commissions which are otherwise owed" may breach the implied covenant of good faith and fair dealing, despite the employee's status as an at-will employee. *Wakefield*, 769 F.2d at 112.

that "§§ 10 and 11 respectively provide the FAA's exclusive grounds for expedited vacatur and modification [of an award]," *Hall St.*, 552 U.S. at 578, most courts, including the Eleventh Circuit, recognized several judicially created bases for vacatur, including "manifest disregard of the law." *See, e.g., Peebles v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 431 F.3d 1320, 1326 (11th Cir. 2005) ("In addition to the four statutory grounds, the Eleventh Circuit Court of Appeals has recognized three non-statutory bases for vacatur of an arbitration award.  The award may be vacated (1) if it is arbitrary and capricious, (2) if its enforcement is contrary to public policy, or (3) if it evinces a manifest disregard of the law.").

Following *Hall Street*, however, the Eleventh Circuit concluded that "judicially-created bases for vacatur" that it had previously recognized, including manifest disregard of the law, were no longer viable.  *S. Comm'ns Servs. v. Thomas*, 730 F.3d 1352 (11th Cir. 2013) (quoting *Frazier v. CitiFinancial Corp., LLC*, 604 F.3d 1313, 1324 (11th Cir. 2010)) (internal quotation marks omitted); *see also Aviles v. Charles Schwab & Co.*, 435 F. App'x 824, 829 (11th Cir. 2011) ("Even manifest disregard of the law is no longer a valid independent, non-statutory ground upon which an arbitration award may be set aside.") (citing *Frazier*, 604 F.3d at 1321-23).  Similarly, the court noted that incorrect legal conclusions provide no basis for vacating or modifying an arbitration award.  *S. Comm'ns Servs.*, 730 F.3d 1352 (quoting *White Springs*, 660 F.3d at 1280).

While Pochat acknowledges *Frazier*, he nonetheless maintains that "manifest disregard" is a basis for vacatur — but not as an independent judicially created ground.  Rather, Pochat argues that manifest disregard of the law should be viewed "as a judicial interpretation of the district court's power under § 10(a)(4) to vacate an award where the arbitrator 'exceeded [his] powers' . . . ." D.E. 1 at 16.  At least two other circuit courts have taken this approach when interpreting the viability of

15

"manifest disregard" as a ground for vacatur after the Supreme Court's pronouncement in *Hall Street*. *See, e.g., T. Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 529 F.3d 329, 339 (2d Cir. 2010) ("This Court recently made clear in *Stolt-Nielsen SA v. AnimalFeeds International Corp.* that it reads Hall Street as 'reconceptualiz[ing] 'manifest disregard 'as a judicial gloss on the specific grounds of vacatur' of arbitration awards under 9 U.S.C. § 10.  So interpreted, we concluded that manifest disregard 'remains a valid ground for vacating arbitration awards.") (citing *Stolt-Nielsen SA v. AnimalFeeds Int'l Corp.*, 548 F.3d 85, 93-94 (2d Cir. 2008), *rev'd on other grounds*, 559 U.S. 662 (2010)); *Comedy Club, Inc. v. Improv. W. Assocs.*, 553 F.3d 1277, 1290 (9th Cir. 2009) (holding that "the manifest disregard ground for vacatur is shorthand for a statutory ground under the FAA, specifically 9 U.S.C. § 10(a)(4), which states that the court may vacate 'where the arbitrators exceeded their powers.'").

But the Eleventh Circuit has expressly declined to adopt this analysis.  For example, in *White Springs*, the appellant argued that the arbitration panel exceeded its powers under Section 10(a)(4) when it "award[ed] prejudgment interest because Florida law prohibits that recovery."  *White Springs*, 660 F.3d at 1283.  Although the argument for vacatur was couched in terms of a statutory basis, the Eleventh Circuit held that "[t]hese points on appeal essentially involve the same argument: the panel exceeded its powers by acting contrary to the law.  We cannot, however, review the panel's award for underlying legal error.  *Even though White Springs presents its argument in terms of the FAA, it asks us to do what we may not — look to the legal merits of the underlying award.*"  *Id.* (emphasis added); *see also Frazier*, 604 F.3d at 1323-24 (finding that, although other circuits "treat[] manifest disregard of the law not as an additional, independent non-statutory ground for vacatur, but instead as a judicial interpretation of the district court's power under § 10(a)(4)," the Eleventh

Circuit "agree[s] with the Fifth Circuit that the categorical language of *Hall Street* compels" the conclusion that "judicially-created bases for vacatur are no longer valid"); *Great Am. Ins. Co. v. Moye*, 733 F. Supp. 2d 1298, 1306 (M.D. Fla. 2010) ("In response [to the holding in *Hall Street*], some circuits have meshed the 'manifest disregard' ground for vacation into the § 10(a)(4) 'exceeded their scope' provision. . . . The Eleventh Circuit, however, has rejected this approach and regards the statutory bases as exclusive.") (citing *Frazier*, 604 F.3d 1313). In view of Eleventh Circuit precedent, no basis exists for vacating an arbitration award for manifest disregard of the law. Accordingly, Petitioner's request is denied.

> 2.     <u>The Panel Did Not Exceed its Powers or Engage in "Misbehavior" with Respect to Merrill Lynch's Late Document Production</u>

Pochat also seeks vacatur under FAA Sections 10(a)(3) and 10(a)(4) based on the Panel's evidentiary rulings and its denial of Pochat's request that Respondents be sanctioned for discovery violations. *See* D.E. 1 at 8-11, 19-21. As mentioned above, Pochat filed an Emergency Motion with the Panel regarding Respondents' production of additional discovery documents several days before the Hearing was to begin. *Id*. at 9. The late production included documents — the cover page to a 1999 Merrill Lynch Branch Office Policy Manual and two internal Merrill Lynch regulations titled "Financial Relationships with Customers" and "Outside Activities" — that Petitioner avers had not been produced previously and were "crucial" to his case. *Id*. at 10. Respondents also produced a second Declaration from Pochat's supervisor in Buenos Aires during the period when the alleged "selling away" allegedly occurred. *Id*. According to Pochat, this document production violated both the Panel's discovery order[7] and FINRA Rule 13514.[8]

---

        [7] The Panel Chairperson entered a discovery Order on December 3, 2010, stating as follows:

In his Motion before the Panel, Petitioner requested that Respondents be sanctioned for their late production, specifically asking that the Arbitrators "enter an Order striking Respondents' Pleadings and Defenses; that a disciplinary referral be initiated against Respondents at the conclusion of this arbitration; that monetary sanctions be assessed against Respondents; that this action proceed to Final Hearing on the issues of damages only; and for any further relief that this Panel deems just and proper." D.E. 1-11 at 17.  After reviewing the Motion and hearing argument from both sides on the issue, the Panel orally denied Petitioner's request for sanctions and permitted the documents to be entered into evidence.  *See* D.E. 14-2.

Petitioner contends that by not sanctioning Respondents and allowing the late-produced documents to be entered into evidence the Arbitrators "exceeded their powers" under section 10(a)(4) and engaged in "misbehavior" sufficient to justify vacatur under section 10(a)(3). *Id.* at 19-21.  The Court respectfully disagrees.

As the Eleventh Circuit has explained, "arbitration proceedings 'need not follow all the 'niceties' of the federal courts; [they] need provide only a fundamentally fair hearing.'" *Indus. Risk*

_____

> The Respondent has indicated that they have already produced all responsive non-privileged documents in their possession.  It is ordered that the appropriate person in Merrill Lynch who is responsible for conducting the document search must state in writing: 1) he or she conducted a good faith search for the requested documents; 2) describe the extent of the search; and 3) state that, based on the search, no further responsive non-privileged documents (other than those produced) exists.

D.E. 1-11 at 5-6.

[8] FINRA Rule 13514(a) states, in relevant part, "At least 20 days before the first scheduled hearing date, all parties must provide all other parties with copies of all documents and other materials in their possession or control that they intend to use at the hearing that have not already been produced."

*Insurers v. M.A.N. Gutehoffnungshutte GmbH*, 141 F.3d 1434, 1443 (11 Cir. 1998) (citing *Grovner v. Georgia-Pacific*, 625 F.2d 1289, 1290 (5th Cir. Unit B 1980)).  Arbitrators "enjoy wide latitude in conducting an arbitration hearing," and they "are not constrained by formal rules of procedure or evidence." *Robbins*, 954 F.2d at 685.  "Although those procedures might not be as extensive as in the federal courts, by agreeing to arbitrate, a party 'trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration.'" *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991) (quoting *Mitsubishi Motors, Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985)).  Moreover, "the arbitrator has great flexibility and the courts should not review the legal adequacy of his evidentiary rulings." *Amalgamated Meat Cutters & Butcher Workmen v. Neuhoff Bros.*, 481 F.2d 817, 820 (5th Cir. 1973).[9]

    With respect to Section 10(a)(3) in particular, courts have emphasized that this subsection does not warrant vacatur where an arbitrator merely made an erroneous discovery or evidentiary ruling; rather, a plaintiff must show that the arbitrator's handling of these matters was in bad faith or so gross as to amount to affirmative misconduct, effectively depriving the plaintiff of a fundamentally fair proceeding.  *See, e.g.*, *United Paperworkers*, 484 U.S. at 40 (regarding evidentiary rulings, an arbitrator's decision will be a basis for vacatur under section 10(a)(3) only when such error was "in bad faith or so gross as to amount to affirmative misconduct"); *Scott v. Prudential Secs., Inc.*, 141 F.3d 1007, 1016 (11th Cir.1998), *overruled in part on other grounds by Hall St.*, 552 U.S. 576 ("a mere difference of opinion between the arbitrators and the moving party as to the correct resolution of a procedural problem will not support vacatur under section 10(a)(3)");

---

    [9] Pursuant to *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), opinions of the Fifth Circuit issued prior to October 1, 1981, are binding precedent in the Eleventh Circuit.

*Marshall & Co. v. Duke*, 941 F. Supp. 1207, 1211 (N.D. Ga. 1995) (Section 10(a)(3) "does not . . . . invite hindsight evaluations of the correctness of the judgment of an arbitration panel in managing the presentation of evidence during an arbitration" because arbitrators have "wide latitude in conducting an arbitration hearing") (citation omitted).  Furthermore, even a showing of arbitrator "misbehavior," without more, does not justify vacatur, because § 10(a)(3) also includes a prejudice element that the petitioning party must satisfy.  *See* 9 U.S.C. § 10(a)(3).

With the foregoing in mind, the Court concludes that the Panel did not exceed its powers nor was it guilty of misbehavior that prejudiced Petitioner's rights when it declined to sanction Respondents and allowed the late-produced documents to be admitted into evidence.  First, with respect to the Panel's denial of Pochat's request for sanctions, the FINRA rule regarding sanctions for alleged discovery abuses, FINRA Rule 13511, states, in relevant part,

> (a)     The failure to cooperate in the exchange of documents and information as required under the Code may result in sanctions.  The panel *may* issue sanctions against any party in accordance with Rule 13212(a) for:
>
> > - Failing to comply with the discovery provisions of the Code, unless the panel determines that there is a substantial justification for the failure to comply.

FINRA Rule 13511(a) (emphasis added).  FINRA Rule 13212(a), which Rule 13511(a) references, provides,

> (a)     The panel *may* sanction a party for failure to comply with any provision in the Code, or any order of the panel or single arbitrator authorized to act on behalf of the panel. Unless prohibited by applicable law, sanction *may* include, but are not limited to:
>
> > - Assessing monetary penalties payable to one or more parties;

> - Precluding a party from presenting evidence;
> - Making an adverse inference against a party;
> - Assessing postponement and/or forum fees; and
> - Assessing attorneys' fees, costs, and expenses.

FINRA Rule 13212(a) (emphasis added).  The texts of these two rules make clear that a panel's decision to impose discovery sanctions is entirely discretionary.  Moreover, even if a panel determines that sanctions are appropriate for a discovery violation, the panel has wide latitude in determining what particular sanction or sanctions to impose.  Thus, in denying Pochat's Motion for Sanctions, the Panel could not have exceeded its powers, since the FINRA rules, which govern the arbitration proceeding in this case, explicitly leave the matter of sanctions to the judgment of the arbitrators.  Nor has this Court been presented with any evidence that, when it declined to sanction Respondents, the Panel acted "in bad faith" or engaged in "misbehavior" under Section 10(a)(3).

Similarly, the Panel did not exceed its powers or participate in "misbehavior" when it decided to admit the late-produced documents into evidence.  First, although the FINRA rules do state that, at least twenty days prior to the hearing, a party must produce the documents it intends to admit, the Court has not found, nor has Petitioner cited, any authority holding that a party's violation of a FINRA discovery rule (or any arbitral panel's procedural rules) is grounds for vacatur under either Section 10(a)(3) or 10(a)(4).  To the contrary, the few courts to have considered such an argument have held that violations of FINRA procedural rules are not a valid basis for vacating an award.  *See, e.g., Butterworth v. Morgan Keegan & Co., Inc.*, 2012 LEXIS 140209, *46-48 (N.D. Ala. Sept. 28, 2012) (declining to vacate an arbitration award where petitioner argued for vacatur based on the panel's failure to enforce FINRA discovery rules); *Stone v. Bear, Stearns & Co., Inc.*, 872 F. Supp. 2d 435, 452 (E.D. Pa. 2012) ("To hold otherwise would risk turning ever minor violation of FINRA

rules . . . into grounds for vacatur.  This would run counter to the policy in this country favoring the finality of arbitration awards, as well as the Supreme Court's recent admonitions in *Hall Street* that 'exceed[ing] . . . powers' in section 10(a)(4) is a species of 'extreme arbitral conduct' and *Stolt-Nielsen* that section 10(a)(4) attacks must fail unless the 'arbitrator strays from interpretation and application of the agreement and effectively 'dispenses with his own brand of industrial justice.''') (internal citations omitted); *see also Cartwright v. Roxbury Capital Mgmt., LLC*, 2007 U.S. Dist. LEXIS 32656, * 11 (M.D. Fla. May 3, 2007) ("The Plaintiff's claim is without merit because the NASD's violation of its procedural rules, without more, does not support the allegation that the Panel acted "contrary to law" because those rules are not law.") (citing *Max Marx Color & Chem. Co. Employees' Profit Sharing Plan v. Barnes*, 37 F. Supp. 2d 248, 253 (S.D.N.Y. 1999) ("[T]o the extent that petitioners' claim is that the Panel disregarded NASD rules, it is meritless. NASD rules are not 'law.' Petitioners must point to a statutory violation to warrant vacatur of an arbitral award, not a violation of the code of arbitration procedure.'"))

Moreover, even if FINRA discovery-rule violations could be considered a form of arbitrator "misbehavior," Petitioner has not shown that his rights were prejudiced by the documents' admission, as required to justify vacatur under Section 10(a)(3). *See* 9 U.S.C. § 10(a)(3).  Other than making general allegations that he was "severely prejudiced" by the late production, Pochat offers only his conclusory claim that "[t]he entire outcome of the case could have been different" had the document been timely produced because, "[f]or example, Mr. Pochat could have decided to settle the case rather than proceed to a hearing had he been given the opportunity to review and analyze the produced documents."  D.E. 1 at 20.  Eleventh Circuit case law on Section 10(a)(3), however, demonstrates that vacatur is warranted only where the arbitrators' conduct deprives the party of a

fundamentally fair hearing. *See, e.g., Rosensweig v. Morgan Stanley & Co.*, 494 F.3d 1328, 1334 (11th Cir. 2007) (finding that vacatur was not warranted under section 10(a)(3) because, even though the arbitration panel refused to hear certain evidence, the party was not deprived of a fair hearing); *see also Indus. Risk Insurers*, 141 F.3d at 1444 n. 11 (rejecting appellants' argument for vacatur based on the last-minute admission of discovery materials; because appellants were given an opportunity to rebut the documents' contents, the "relatively late provision of the [] report did not render the proceedings fundamentally unfair"). In this case, Petitioner was permitted to submit and argue his Emergency Motion before the Panel and had ample opportunity to dispute the content or relevancy of the late discovery materials during the Final Hearing. *See* D.E. 14-2. The Court, therefore, declines to find that Petitioner was deprived of a fundamentally fair hearing and denies his request for vacatur pursuant to Sections 10(a)(3) and 10(a)(4).

**D.    Merrill Lynch's Cross-Petition to Confirm in Part and Modify in Part, or, Alternatively, Correct, or, Alternatively, Vacate in Part the Award**

Respondents' Petition argues several alternative grounds for challenging the part of the Award finding Merrill Lynch liable to Pochat for failing to supervise him properly in its Buenos Aires office. *See* Case No. 12-22414, D.E. 1-15. Merrill Lynch first seeks to confirm in part and modify in part the Award. *See id*. at 9-11. More specifically, Respondents seek an Order allowing Merrill Lynch to offset the amount they owe Pochat under the Award by the amount Pochat owes Merrill Lynch, so judgment is entered for the net amount owed to Respondents. *Id*. Alternatively, pursuant to Section 11(b), Respondents ask the Court to correct the part of the award in favor of Pochat "because the arbitrators awarded upon a matter not submitted to them." *Id*. at 11-13. In the second alternative, Merrill Lynch seeks to confirm the part of the award in Respondents' favor but

to vacate the portion in Pochat's favor on the grounds that the Panel exceeded its powers and engaged in misconduct by awarding on a claim that was not presented and was time-barred and by denying Respondents' Motion to Adjourn the Final Hearing. *Id*. at 16-18.

Pochat responds that "this Court may not 'substitute' the Panel's judgment by modifying the Decision to include set-off rights." Case No. 12-22414, D.E. 11 at 12. He also argues that the failure-to-supervise claim was indeed presented to the Panel and that Merrill Lynch waived any assertions that such a claim was time-barred by not raising the issue before the Arbitrators. *See id*. at 12-18. Finally, Pochat concludes that the Panel's denial of Merrill Lynch's Motion to Adjourn does not evidence misconduct because arbitrators have wide discretion in ruling on evidentiary issues, and Respondents have not established that they were prejudiced by the decision. *Id*. at 18-20. The Court addresses in reverse order each of Respondents' challenges to the Award.

     1.    <u>Petition to Vacate in Part</u>

          a.    *The Panel Did Not Exceed its Powers by Awarding on a Claim that was Not Submitted*[10]

Respondents first argue that the award in favor of Pochat must be vacated under Section 10(a)(4) because Pochat "never asserted a claim for failure to supervise, either through his pleadings or throughout the arbitration process itself." Case No. 12-22414, D.E. 1-15 at 15. In support of its argument, Merrill Lynch directs the Court to Pochat's Statement of Claim and contend that Pochat "did not allege in any way that Merrill Lynch failed to supervise him or assert any legal claims on

---

[10] Although the heading for this section of Respondents' petition is titled "In Issuing an Award on a Claim Ineligible for Arbitration, the Arbitrators Exceeded Their Powers and were Guilty of Misconduct," Respondents fail, thereafter, to make any reference to "misconduct" in their argument. *See* 12-22414, D.E. 1-15 at 15. Nor is it apparent to the Court that the Panel committed misconduct of any sort. Therefore, Merrill Lynch's request for vacatur on the grounds that the Panel engaged in misconduct by awarding on a claim not before it is denied.

that basis." *Id.* They also insist that "[n]owhere in his Pre-hearing brief did [Pochat] raise any allegation or claims of failure to supervise" and that "[d]uring the four full days of the arbitration hearing, [Pochat] never raised failure to supervise as a claim under which he was seeking to recover." *Id*. at 12.

Although "[t]he law is well-established that an arbitrator can bind parties only on issues that they have agreed to submit to him," *Davis v. Prudential Secs., Inc.*, 59 F.3d 1186, 1194 (11th Cir. 1995), the record reveals that the issue of failure to supervise was properly before the Panel.  First, it is evident from the Award itself, which found Merrill Lynch "liable for its failure to provide adequate supervision to Claimant," that the Arbitration Panel "plainly believed" that the issue of improper supervision was an arbitrable claim.  *See White Springs*, 660 F.3d at 1281 (noting that an arbitrator's "plain belief" of submission is relevant to determine whether an issue has indeed been submitted for arbitration) (citing *Executone Info. Sys., Inc. v. Davis*, 26 F.3d 1314. 1321-22 (5th Cir. 1994)).

More significantly, however, the record reflects that the Panel received briefing and heard argument on the issue of Merrill Lynch's alleged negligent supervision of Pochat during his employment in Argentina.  In his Statement of Claim, for example, the third claim that Pochat asserted was for relief based on "Breach of Contract/Negligence":

> Merrill Lynch's wrongful conduct towards Mr. Pochat, as detailed above, renders it liable for breach of its employment contract(s) with him . . . .
>
> In the event the Panel determines that any of Merrill Lynch's wrongful actions fail to constitute a breach of contract, Merrill Lynch is nonetheless liable to Mr. Pochat pursuant to negligence theory.  At all relevant times, Merrill Lynch owed a duty to treat Mr. Pochat in accordance with reasonable and prudent standards of conduct, and it

is liable in tort for damages from its breaches of that duty.

D.E. 1-5 at 16 (emphasis added).  The "wrongful conduct" that Pochat states is "detailed above" refers to numerous allegations that Merrill Lynch never informed Pochat that outside investments with firm clients were prohibited, that such activities were commonplace in the Buenos Aires office, that he orally disclosed the subject investment to his Branch Manager; and that he reported it on his "Outside Interest Questionnaire."  *See* D.E. 1-5 at 2-23.  For instance, Pochat claimed, "If the transaction that Mr. Pochat was involved in deviated from Merrill Lynch's code of conduct or Argentina government securities law, *Mr. Pochat was never trained in this regard* and to the contrary, it was common practice in the branch to be involved in private ventures."  *Id*. at 7 (emphasis added).  In addition, Pochat averred in his Amended Statement of Claim, "To his knowledge, Mr. Pochat was not violating any of Merrill Lynch's rules and regulations, or any U[.]S[.] Securities laws . . . and this was common practice in Argentina.  In fact, the Merrill Lynch Branch Manager at the time had expressed a desire to participate."  *Id*. at 6.  Pochat again repeated, "Prior to the investment, Mr. Pochat made his manager aware that he would be investing in this venture. Once again, it is undeniable that Merrill Lynch could have easily ascertained the details of the investment, have sought greater information and or disclosure if such had been needed or required."  *Id*.

Pochat made similar claims in the Pre-hearing Brief he submitted to the Panel.  In his introduction, for example, Pochat described himself as having been "recklessly and unjustifiably terminated by Merrill Lynch in 2009 for a single and isolated act that occurred 10 years prior in 1999 — an act which he disclosed to his manager and which Merrill Lynch had failed to inform him was unauthorized and improper."  Case No. 12-22414, D.E. 1-10 at 2-3.  With respect to being hired by

the Miami office after disclosing the outside investment to his manager, Pochat argued, "[O]ne can only conclude that Merrill Lynch is itself guilty of negligence and recklessness in failing to do its own due diligence and investigation to determine whether Mr. Pochat was worthy of all Merrill Lynch provided him." *Id.* at 6.

These issues were again before the Panel during closing arguments. Counsel for Pochat contended that the policies and procedures in the Merrill Lynch Buenos Aires office were "informal." He further argued that Respondents had been unable to provide any evidence to the Panel establishing that Pochat had ever received a Merrill Lynch training manual in Buenos Aires. *See* D.E. 16-1 at 5-6.

Based on the record, it is clear that the issue of whether Merrill Lynch acted negligently toward Pochat by not supervising him properly in Argentina was, indeed, submitted to the Arbitrators. While Pochat may not have employed the exact phrase that the Arbitrators did in the Award ("failure to provide adequate supervision"), Pochat nonetheless specifically requested relief in his Statement of Claim based on Merrill Lynch's alleged negligent treatment of him and repeatedly argued that he had not been properly supervised regarding the firm's policies on outside investments with clients. Thus, the Panel did not exceed its authority by finding Merrill Lynch liable to Pochat for negligent supervision.

b.   *The Panel Did Not Exceed its Powers By Deciding a Claim That Was Ineligible for Arbitration*[11]

Merrill Lynch also contends that the Panel exceeded its powers by awarding on a claim that was ineligible for arbitration.  *See* Case No. 12-22414, D.E. 1-15 at 13-15.  Respondents base their argument on FINRA Rule 13206, which states that "[n]o claim shall be eligible for submission to arbitration under the Code where six years have elapsed from the occurrence or event giving rise to the claim."  FINRA Rule 13206(a).  As Respondents point out, Pochat worked in Merrill Lynch's Buenos Aires office until only 2002.  *Id.*  In order to be eligible for arbitration under FINRA Rule 13206(a), Respondents therefore reason, Pochat would have had to have submitted his claim for inadequate supervision within six years, or by 2008.  But Pochat did not file his Statement of Claim with FINRA until December 2009.  *Id.*  Thus, Respondents conclude that Pochat's claim for negligent supervision was not eligible for FINRA arbitration, and the award based upon it must be vacated.  *Id.* at 15.

While Respondents are correct that FINRA Rule 13206(a) imposes a six-year eligibility period for bringing claims, the second sentence of the rule states, "The *panel will resolve any questions regarding the eligibility of a claim* under this rule."  FINRA Rule 13206(a) (emphasis added).  Claim eligibility is therefore a procedural matter for the arbitrators to decide, which receives the same level of deference by a reviewing court as any other procedural matter that the Panel determines.  *See Robbins*, 954 F.2d at 685 (arbitrators "enjoy wide latitude in conducting an

---

[11] Respondents' section heading for this portion of their petition includes an allegation of "arbitrator misconduct."  *See* Case No. 12-22414, D.E. 1-15 at 13.  Again, however, Respondents do not discuss "misconduct" with respect to their argument that Pochat's claim was ineligible for arbitration.  Nor has the Court on its own noticed any such misconduct.  Therefore, to the extent that Respondents' Petition seeks to vacate under Section 10(a)(3) for awarding on an ineligible claim, it is denied.

28

arbitration hearing," and they "are not constrained by the formal rules of procedure or evidence").

Moreover, by not contesting the Panel's consideration of Pochat's failure-to-supervise claim until

after the Panel issued its Award, Respondents waived any objection that the claim was time barred.

Nor can the Court credit Merrill Lynch's excuse for not raising this objection during the Arbitration,

in view of the fact that Pochat's failure-to-supervise claim was properly before the Panel.  Thus,

Merrill Lynch's contention that it could not have objected is unavailable, and the Court denies

Respondents' Motion to Vacate based on FINRA Rule 13206(a).

      c.    *The Panel Did Not Engage in Misconduct When it Denied Merrill Lynch's Motion to Adjourn and Refused to Permit Certain Evidence at That Time*

Finally, Respondents contend that vacatur is warranted under Section 10(a)(3) because the

"arbitrators' denial of Merrill Lynch's Motion to Adjourn prevented it from presenting pertinent and

material evidence at the hearing."  As discussed above, one of the Arbitrators, in the final hearing

session, requested that Merrill Lynch produce to the Panel documents regarding the reporting of

outside investments by several other Financial Advisors who worked in Merrill Lynch's Buenos

Aires office during the time when Pochat allegedly engaged in "selling away" and who were also

apparently involved in the IPOOL investment.  *See* Case No. 12-22414, D.E. 11; *see also* D.E. 15-1

at 93-101.  When questioned by counsel for Merrill Lynch as to why the Arbitrator wanted these

documents, the Arbitrator explained, "The fact is, if [Merrill Lynch] did not follow the rules, I want

to make sure that they didn't follow the rules for everybody. . . .  See, the consistency of the manager

or the non-manager is what we want to see."  D.E. 15-1 at 99-100.

Merrill Lynch orally "objected to being required to produce documents without witness

testimony after the close of the hearing sessions, but that objection was overruled." Case No. 12-

22414, D.E. 1-15 at 7.   Respondents then made an oral motion to adjourn "to permit further discovery on the topics that had become of interest to the arbitrator . . . and to permit Merrill Lynch to bring forward witnesses who could address those issues." *Id*. After going into executive session, the Panel orally denied Respondents' motion to adjourn and ordered Merrill Lynch to produce the documents to the Panel within two weeks, which Merrill Lynch subsequently did.  D.E. 1 at 5-10.

Respondents claim that "Merrill Lynch was unquestionably prejudiced by the Panel's decision to proceed with the arbitration hearing despite the fact that new issues had been raised upon which Respondent had not been permitted to obtain discovery or obtain the testimony of relevant witnesses."  Case No. 12-22414, D.E. 1-15 at 18.  Thus, Merrill Lynch urges, "[T]his Court should vacate that part of the arbitration award providing for damages to [Pochat] because the arbitrators were guilty of misconduct in refusing to postpone the hearing to permit Merrill Lynch to properly defend itself on that claim." *Id*.

Section 10(a)(3) of the FAA permits vacatur of an arbitration award "where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown."  9 U.S.C. § 10(a)(3).  When reviewing an arbitrator's refusal to postpone a hearing, a court "must decide whether there was 'any reasonable basis' for failing to postpone the hearing to receive relevant evidence." *Scott*, 141 F.3d at 1016 (quoting *Schmidt*, 942 F.2d at 1574).

"Any reasonable basis" is a broad standard.  In *Schmidt v. Finberg*, for example, the court concluded that "an arbitration panel's possible reliance on any one of a number of factors, including the desire for an expeditious resolution of the dispute, justified its refusal to postpone a hearing . . . ." *Scott*, 141 F.3d at 1016 (citing *Schmidt*, 942 F.2d at 1574-75).  Here, it would have been perfectly "reasonable" for the Panel to have determined that the Arbitration proceedings, which had

lasted for more than three years, "had already been protracted so long as to violate the policy of expeditious handling of such disputes." *Schmidt*, 942 F.2d at 1574 (citing concern for further delay of the proceedings as one of "several good and sufficient reasons to support the panel's action" in refusing to postpone the hearing long so that an additional witness could testify).

Furthermore, the Eleventh Circuit has held that "an arbitration award must not be set aside for the arbitrator's refusal to hear evidence that is cumulative or irrelevant." *Robbins*, 954 F.2d (citation omitted). Nor is an arbitrator "bound to hear all the evidence tendered by the parties." *Robbins*, 954 F.2d at 685.  Given the length of the Arbitration proceedings and the volume of evidence and filings in connection with it, the Panel reasonably could have concluded that no additional evidence was warranted.  *See Booth v. Hume Pub.*, 902 F.2d 925, 932 ("the Federal Arbitration Act allows arbitration to proceed with only a summary hearing and with restricted inquiry into factual issues") (citation omitted).  Therefore, the Panel's refusal to adjourn the Arbitration and to receive additional evidence from Merrill Lynch did not constitute misconduct in violation of Section 10(a)(3).

    2.    Petition to Correct in Part

Respondents next suggest that the Award should be corrected under Section 11(b), asserting that "because the arbitrators issued an award on a matter — namely the failure to supervise claim — never submitted to them, the award should be corrected striking that portion of the award."  Case No. 12-22414, D.E. 1-15, at 12.  Because Pochat's claim of inadequate supervision was properly before the Panel, however, Respondents' request that this portion of the Award be corrected is denied.

3.      Petition to Modify in Part

In the third alternative, Merrill Lynch requests that the Court modify in part the Award by offsetting the amount awarded to Pochat against the larger amount awarded to Merrill Lynch, and enter judgment confirming the rest of the award.  *See* Case No. 12-22414, D.E. 1 at 9-11.

Respondents argue that modification is proper pursuant to 9 U.S.C. § 11(c), which states that courts may modify an arbitration award "where the award is imperfect in matter of form not affecting the merits of the controversy."  Section 11 also contains the general provision that "[t]he order may modify and correct the award, so as to effect the intent [of the arbitrators' decision] and promote justice between the parties." 9 U.S.C. § 11.

In their Petition, Merrill Lynch contends that "the award is imperfect in a matter of form in that the award does not specifically state whether Merrill Lynch may set off the $200,000 owed to Respondent against the more than $800,000 owed by Respondent to it" and that modifying the award to allow offset "would not affect the merits of the controversy as it would maintain the clear intent of the arbitrators in making two monetary awards."  Case No. 12-22414, D.E. 1 at 10.  Respondents further reason that allowing offset "would promote justice between the parties because it would be contrary to notions of fairness to require Merrill Lynch to pay Respondent $200,000 when he already owes Merrill Lynch in excess of, and refuses to pay, more than $800,000."  *Id*.

Pochat, on the other hand, vigorously opposes any modification that would offset the Award amounts, arguing that such "an unjustified rewriting of the Panel's Decision . . . would stand in stark contradiction to the unambiguous intent of the Panel Arbitrators."  Case No. 12-22414, D.E. 11, at 1-2.  He contends that the "overwhelming weight of case law" counsels against the ability of the Court to order offset.  *Id*. at 9.  Even if offset were generally permissible, Pochat submits,

32

Respondents are not entitled to offset because they did not affirmatively request it of the Panel and because Merrill Lynch's "unclean hands" (attributable to its alleged negligent supervision of Pochat) preclude such relief. *Id*. at 9-10. Finally, even if the Court concludes that the Award is ambiguous regarding set off, Pochat suggests that the proper course of action is to remand the matter to the Panel for determination. *Id*. at 12.

Scant case law exists in the Eleventh Circuit on the question of when modification of an arbitration award is appropriate pursuant to Section 11(c) of the FAA. *See, e.g., Frazier*, 604 F.3d at 1322 (affirming, without analyzing, the district court's finding that modification under Section 11(c) was inapplicable where the appellant argued that "the arbitrator's decision, insofar as it granted [the appellee] an equitable lien while simultaneously finding that [the appellant] was entitled to retain her homestead exemption, was 'subject to multiple interpretations' and thus 'imperfect,'" implying that modification would have affected the merits of the award). Nor has any Eleventh Circuit court spoken on the issue of offset where, as here, the arbitrators made a monetary award to each of the parties, and offset was not addressed during the arbitration proceedings or in the award itself.

At least one other circuit, however, has addressed offset in this general factual scenario. *See Nat'l Risk Underwriters, Inc. v. Occidental Fire & Cas. Co. of N.C.*, 931 F.2d 1015 (4th Cir. 1991). In *National Risk Underwriters*, the Fourth Circuit considered an appeal from the district court's confirmation of an arbitration award wherein the court offset the two award amounts and entered a judgment in favor of one party for the net amount. *Id*. at 1016. There, like here, each party to the arbitration proceeding had prevailed on a claim against the other, and the award, which did not calculate a net amount, was silent on the matter of offset. *Id*. The Fourth Circuit held that the offset

33

fell within the district court's power and rejected the argument that offsetting the monetary awards constituted an improper modification:

> The district court, citing *United States v. Munsey Trust Co.*, 332 U.S. 234, 241 n.4 . . . (1947), concluded that a general [common law] rule exists under which offset is available where parties are mutual debtors. Since the arbitrators did not express a clear intent not to offset the awards, the district court ruled that the arbitrators must have intended this general rule to apply.

*Id.* at 1016-17; *see also RGA Reinsurance v. Ulico Cas. Co.*, 355 F.3d 1136, 1139 (8th Cir. 2004) (affirming the district court's grant of the appellee's request for offset where mutual awards had been made but the award was silent on offset, finding that providing for offset was merely a confirmation of the award consistent with the panel's order and that "[i]f an award is unambiguous but needs clarification, then a district court has jurisdiction to conduct a confirmation proceeding"); *Atl. Aviation, Inc. v. EBM Group, Inc.*, 11 F.3d 1276 (5th Cir. 1994) (reversing the district court's ruling that it could not modify the arbitration award to allow for offset, finding instead that where "[n]either party disputed that the money was owed [under the award], and the testimony of a majority of the arbitrators reveals that it was the panel's intention to offset the amount owed to [the prevailing party] by the amount [it] still owed to [the other party to the arbitration]," the panel's failure to provide a net award amount "was in essence a clerical error which may be corrected without disturbing the merits of the arbitrators' decision").

Respondents have also directed the Court to *UBS Financial Services, Inc. v. Riley*, 2012 LEXIS 69875 (S.D. Cal. May 18, 2012), which involves facts almost identical to those before this Court. In *Riley*, UBS had initiated a FINRA arbitration proceeding in order to recover from its former broker, Riley, the outstanding balance on two promissory notes, which had become due when

Riley ended his employment with UBS prior to the expiration of the notes' forgiveness period.  *Id*.

at *2.  The FINRA panel issued mutual monetary awards, but the award was silent as to whether the

two amounts could be offset.  *Id*. at *3.  UBS, the party with the larger award, subsequently filed a

motion with FINRA asking for clarification from the panel regarding offset, but its request was

denied by the Director of Arbitration.  *Id*. at *3-4.  The matter then went before the district court on

UBS's petition to, among other things, modify the award to allow for offset.  *Id*. at *4.

The district court, noting that FAA Section 11(c) does not allow a court to substitute its

judgment for that of the arbitrators but does permit modifying an award to reflect the intent of the

arbitrator, concluded that offset was proper.  *Id*. at *10.  As the court explained,

> The arbitration award in this case would seem to be a prime example
> of an award that is 'imperfect as to form' rather than in substance.
> Here, the award would require petitioners to pay Riley the full
> amount of the award even though he owes a greater amount to UBS.
> But the arbitration panel never considered the merits of setoff, as the
> request for clarification filed by petitioners was not submitted to the
> panel for review.  *Allowing for setoff would not require the Court to
> reconsider the merits, and it would not affect the amount of damages
> awarded to either part*.  Rather, it would simply modify the form of
> the award to avoid unjust consequences. In addition, allowing Riley
> to pay just the net obligation avoids 'the absurdity of making A pay
> B when B owes A.'

*Id*. at *9-10 (emphasis added) (citing *Citizens Bank v. Strumpf*, 516 U.S. 16, 18 (1995)).[12]

This Court agrees with the reasoning in the cases discussed above.  If the Court did not

permit offset, Merrill Lynch would be faced with the "absurdity" of having to pay Pochat when

---

[12] In *Citizens Bank v. Strumpf*, the Supreme Court described the right of setoff as follows:
"The right of setoff (also called offset) allows entities that owe each other money to apply their
mutual debts against each other, thereby avoiding the 'absurdity of making A pay B what B owes
A.'" *Citizens Bank*, 516 U.S. at 18 (citing *Studley v. Boylston Nat'l Bank*, 229 U.S. 523, 528
(1913)).

Pochat owes Merrill Lynch a far greater amount, which he has thus far refused to repay. Put simply, absent offset, Merrill Lynch would have no choice but to pay Pochat $200,000, only to seek immediately to recoup that sum from him as part of the full $848,915.48, plus interest, that Pochat owes Merrill Lynch. Of course, without clarification from the Panel, it is impossible to know for certain if it would have approved offset. But nothing in the Award or the Arbitration proceedings even hints that the Panel intended not to allow for setoff, and it is hard for this Court to imagine that the Arbitrators would have specifically desired the circuitous result that would arise from precluding setoff, especially given that "the basic policy of conducting arbitrations is to offer a means of deciding disputes expeditiously and with lower costs than in ordinary litigation." *Schmidt*, 942 F.2d at 1573.

Nor, contrary to Pochat's suggestion, does the "overwhelming weight of case law" — or even any case law of which this Court is aware — militate against the Court's ability to order offset under these circumstances. *See* Case No. 12-22414, D.E. 11 at 9. Although Pochat directs the Court to a number of cases that he maintains support his position, all are materially distinguishable. *See, e.g., Trustmark Ins. Co. v. Clarendon Nat. Ins. Co.*, 2009 LEXIS 109414 (N.D. Ill. Nov. 20, 2009) (declining to order setoff where party was attempting to offset arbitrator's award against a prior settlement agreement in an unrelated matter); *Vertical UK LLP v. Dundee Ltd.*, 2011 U.S. Dist. LEXIS 63136 (S.D.N.Y. June 13, 2011) (issue of setoff had been presented to the arbitrators during the proceeding, and the award had expressly mentioned offset); *Orion Shipping and Trading Co. v. E. States Petroleum Corp.*, 206 F. Supp. 777 (S.D.N.Y. 1962) (dealing with the arbitrator's calculation of damages with no mention of the issue of offset at all).

As to Petitioner's other arguments against offset, the Court finds them similarly unavailing.

36

First, the fact that the Panel made an award to each party in separate paragraphs and did not mention offset is not, in this Court's estimation, "undeniable and blatantly clear" evidence that the Panel intended not to allow offset.  Case No. 12-22414, D.E. 11 at 9.  Rather, the Panel's silence on the issue appears to indicate that it never considered offset one way or the other.

Finally, this Court does not conclude that Merrill Lynch is precluded from seeking offset because Respondents did not affirmatively request it from the Panel or because they have "unclean hands."  As to the first point, Respondents aptly point out, "Merrill Lynch was not required to predict how the Panel would render the award . . . .  Merrill Lynch could not request that the Panel address the issue of setoff until it was presented with the award, and at that point endeavored to have the Panel address the issue, but Mr. Pochat objected and without both parties agreeing, FINRA refused to permit the Panel to do so."  D.E. 12 at 4-5.  This Court agrees.  With respect to Pochat's "unclean hands" argument, this Court does not find that Merrill Lynch's alleged failure to supervise rises to the level of "unclean hands."  Moreover, it is further noteworthy that, although Pochat now asks the Court to remand the case to the Panel to determine whether offset should be awarded, he fought submission and effectively precluded the Panel from providing clarification when originally given the opportunity to allow the Panel to resolve this issue.  Under these circumstances, no equitable doctrine bars the Court from ordering offset.  Accordingly, the Court grants Merrill Lynch's petition to modify in part the Award and holds that the $200,000 awarded to Pochat is offset by the $848,915.48, plus interest, awarded to Merrill Lynch.

**E.      Merrill Lynch's Motion for Sanctions in the Form of Attorneys' Fees**

In its final request, Merrill Lynch seeks imposition of an award of attorneys' fees against Petitioner as a sanction for filing an allegedly baseless motion to vacate.  D.E. 8 at 16-18.  Sanctions

are "warranted and necessary," Merrill Lynch argues, because Pochat's Petition to Vacate "is both

frivolous and groundless in law, and it has needlessly increased the cost of litigation." *Id.* at 18.

Merrill Lynch's argument for sanctions relies in large part on the Eleventh Circuit's holding

in *B.L. Harbert International, LLC v. Hercules Steel Co.*, 441 F.3d 905 (11th Cir. 2006), *abrogated*

*on other grounds by Frazier*, 604 F.3d 1313, 1321 (11th Cir. 2010), in which the Court expressed

its "exasper[ation] [with] those who attempt to salvage arbitration losses through litigation that has

no sound basis in the law applicable to arbitration awards." *Harbert*, 441 F.3d at 914.  As the

Eleventh Circuit explained,

> Courts cannot prevent parties from trying to convert arbitration losses
> into court victories, but it may be that we can and should insist that
> if a party on the short end of an arbitration award attacks that award
> in court without any real legal basis for doing so, that party should
> pay sanctions.  A realistic threat of sanctions may discourage baseless
> litigation over arbitration awards and help fulfill the purposes of the
> pro-arbitration policy contained in the FAA. It is an idea worth
> considering.
>
> * * * * *
>
> The warning this opinion provides is that in order to further the
> purposes of the FAA and protect arbitration as a remedy we are
> willing, ready, and able to consider imposing sanctions in appropriate
> cases.

*Id.* at 913-914.  Despite the strong language, the Court ultimately decided not to impose sanctions

in *Harbert*, primarily because the Court found that the party contesting the award "did not have the

benefit of the notice and warning this [the *Harbert*] opinion provides."  *Id.* at 914.

Several years later, however, the Eleventh Circuit did impose arbitration-related sanctions

in *World Business Paradise, Inc. v. Suntrust Bank*, 403 F. App'x 468, 470-71 (2010).  Concluding

that the appellants "failed to muster any controlling authority to support their position [for vacatur]"

38

and that they also "had the benefit of the notice and warning that our *Hercules Steel* opinion provides about our willingness to impose sanctions to deter baseless contests of arbitration awards," the Court held that sanctions were appropriate. *Id*. at 471. Accordingly, the case was remanded to the district court to determine the amount of sanctions to be awarded to the appellee. *Id*. Several district courts in this Circuit have likewise heeded "the explicit and unveiled threat of sanctions articulated in *Harbert*" and have imposed sanctions for frivolous petitions to vacate. *Rueter v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 440 F. Supp. 2d 1256, 1267 (N.D. Ala. 2006) ("The court concludes that Plaintiffs' Motion to Vacate is both frivolous and has no real legal basis. . . . Upon analyzing Defendant's Motion for Sanctions in light of *Harbert* and under the law applicable to sanctions awarded under Rule 11, sanctions are due to be imposed in this case."); *see also Fornell v. Morgan Keegan & Co.*, 2012 U.S. Dist. LEXIS 108677 at *14-16 (M.D. Fla. 2012).

Here, however, though unsuccessful, Pochat's efforts to vacate in part the Arbitration Award are not baseless. The grounds for vacatur that Petitioner raised are colorable and, for the most part, have some support from evidence in the record and from relevant legal authorities. Accordingly, the Court declines Merrill Lynch's request to sanction Pochat.

### *Conclusion*

For the foregoing reasons, the Court confirms the Arbitration Award in full and permits Merrill Lynch to offset the $200,000 it owes to Pochat under the Award by the amount that Pochat owes to Merrill Lynch.

Accordingly, it is **ORDERED and ADJUDGED** as follows:

1.  Petitioner's request that the Court confirm the portion of the Arbitration Award finding Merrill Lynch liable to Pochat in the amount of $200,000 is **GRANTED**;

2.     Petitioner's request that the Court vacate the portion of the Award where Pochat is found liable to Merrill Lynch for the outstanding balance of the promissory note, plus interest from the date of default, is **DENIED**;

3.     Respondents' request that the Court confirm the portion of the Award finding Pochat liable to Merrill Lynch for the balance of the promissory note, plus interest from date of default, is **GRANTED**;

4.     Respondents' request that the Court vacate, or, alternatively, correct, the portion of the award finding Merrill Lynch liable to Pochat for failing to supervise him properly is **DENIED**;

5.     Respondents' alternative request that the Court modify the Arbitration Award to allow Merrill Lynch to offset the amount it owes to Pochat by the amount that Pochat owes to Merrill Lynch under the Award is **GRANTED**;

6.     Respondents' request for sanctions in the form of attorneys' fees is **DENIED**.

7.     The Clerk of Court shall **CLOSE** this case and Case No. 12-22414-CIV-ROSENBAUM

**DONE AND ORDERED** at Fort Lauderdale Florida, this 22nd day of August 2013.

ROBIN S. ROSENBAUM
UNITED STATES DISTRICT JUDGE

Copies:

Counsel of record